[No. 37809.    Department Two.    October 21, 1965.]

*In the Matter of the Application for a Writ of Habeas Corpus of* STEPHEN SOMDAY, *Petitioner,* v. B. J. RHAY, *as Superintendent of the State Penitentiary, Respondent.**

*The Attorney General* and *Stephen C. Way, Assistant,* for respondent.

HAMILTON, J.—Petitioner, Stephen Somday, an enrolled member of the Colville Confederated Tribes of Indians, entered a plea of guilty to the crime of assault in the second degree on February 4, 1964. He was represented by court appointed counsel. The Superior Court of Okanogan County, Washington, accepted the guilty plea, ordered a presentence investigation, and, on March 25, 1964, entered judgment and sentence confining petitioner to the Washington State Penitentiary for a period of not more than 10 years. Asserting that his arrest was illegal, his plea of guilty involuntary, and his incarceration void, petitioner seeks a writ of habeas corpus.

The offense for which petitioner was sentenced occurred October 12, 1963, in the town of Elmer City, Okanogan County, on the right of way of Secondary State Highway

*Reported in 406 P.2d 931.

No. 10-A. Petitioner was thereafter arrested on the same highway between Elmer City and Nespelem, in Okanogan County. The situs of both the assault and the arrest are within the external boundaries of the Colville Indian Reservation and within "Indian country" as that phrase is defined in 18 U.S.C.A. § 1151.[1]

Petitioner first asserts his arrest was illegal because the arresting officer was a policeman employed by the city of Coulee Dam, and the arrest occurred outside and beyond the officer's jurisdiction. This contention is without merit. Affidavits filed by respondent establish that, at the time in question, the arresting officer was also a deputy sheriff of Okanogan County, and as such was invested with appropriate authority.

Petitioner next asserts that his plea of guilty was involuntary because (a) he was held incommunicado and without counsel for a period of time following his arrest; and (b) his court appointed counsel and the prosecuting attorney made promises which induced the plea. In response to this contention, respondent has supplied affidavits from the prosecuting attorney, the deputy prosecuting attorney, and petitioner's court appointed counsel. These affidavits amply demonstrate that petitioner's plea to the offense in question was free and voluntary; that it was entered after full consultation with his counsel; and that no representations, promises or inducements were made or offered. No counter affidavits have been offered or supplied. We accordingly find petitioner's assertions in this respect to be without substance.

Petitioner's third and principal contention is that his

---

[1]"Except as otherwise provided in sections 1154 and 1156 of this title, the term 'Indian country', as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same." 18 U.S.C.A. § 1151.

incarceration is void for the reason that the Superior Court of Okanogan County lacked jurisdiction over his person and the subject matter of the criminal proceeding. He predicates this contention upon his status as an Indian, the fact that the offense occurred in "Indian country," and his assertion that exclusive jurisdiction over the criminal proceeding rested with the federal government.

Again we find no merit in petitioner's contention.

In 1953, Congress enacted Pub. L. No. 280 (67 Stat. 588), consenting to assumption by the states of criminal and civil jurisdiction over Indians and Indian reservations. Relevant portions of Pub. L. No. 280 (67 Stat. 588, 590) provide:

> Sec. 6. Notwithstanding the provisions of any Enabling Act for the admission of a State, the consent of the United States is hereby given to the people of any State to amend, where necessary, their State constitution or existing statutes, as the case may be, to remove any legal impediment to the assumption of civil and criminal jurisdiction in accordance with the provisions of this Act: *Provided,* That the provisions of this Act shall not become effective with respect to such assumption of jurisdiction by any such State until the people thereof have appropriately amended their State constitution or statutes as the case may be.

> Sec. 7. The consent of the United States is hereby given to any other State not having jurisdiction with respect to criminal offenses or civil causes of action, or with respect to both, as provided for in this Act, to assume jurisdiction at such time and in such manner as the people of the State shall, by affirmative legislative action, obligate and bind the State to assumption thereof.

Acting pursuant to the consent so granted, the legislature of the state of Washington enacted Laws of 1957, ch. 240, §§ 1 and 2, p. 941.[2] This statute provided for assumption by

---

[2] "The state of Washington hereby obligates and binds itself to assume, as hereinafter provided, criminal and civil jurisdiction over Indians and Indian territory, reservation, country, and lands within this state in accordance with the consent of the United States given by the act of August 15, 1953 (Public Law 280, 83rd Congress, 1st Session). Laws of 1957, ch. 240, § 1, p. 941.

"Whenever the governor of this state shall receive from the tribal council or other governing body of any Indian tribe, community, band,

the state, through executive proclamation, of civil and criminal jurisdiction over members of Indian tribes and over Indian territory, reservations, country and lands within the state, provided the tribal council or other governing body of the Indian tribe involved expressed to the governor an appropriate desire to be subject of such jurisdiction.[3]

Laws of 1957, ch. 240, and the modus operandi thereof, remained the law of this state until March 13, 1963, when Laws of 1963, ch. 36, amending Laws of 1957, ch. 240 (now codified as RCW 37.12), became effective. The pertinent portions of the amendatory act provide:

> The state of Washington hereby obligates and binds itself to assume criminal and civil jurisdiction over Indians and Indian territory, reservations, country, and lands within this state in accordance with the consent of the United States given by the act of August 15, 1953 (Public Law 280, 83rd Congress, 1st Session), but such assumption of jurisdiction shall not apply to Indians when on their tribal lands or allotted lands within an established Indian reservation and held in trust by the United States or subject to a restriction against alienation imposed by the United States . . . . Laws of 1963, ch. 36, § 1, p. 346.

> Upon the effective date of this amendatory act the state of Washington shall assume jurisdiction over offenses as set forth in section 1 of this amendatory act committed by or against Indians in the lands prescribed in section 1 of this amendatory act to the same extent

or group in this state a resolution expressing its desire that its people and lands be subject to the criminal and civil jurisdiction of the state of Washington to the extent authorized by federal law, he shall issue within sixty days a proclamation to the effect that such jurisdiction shall apply to all Indians and all Indian territory, reservation, country, and lands of the Indian body involved in accordance with the provisions of this act: *Provided,* That with respect to the Colville, Spokane, or Yakima tribes or reservations, he shall not issue such proclamation unless the resolution of the tribal council has been ratified by a two-thirds majority of the adult enrolled members of the tribe voting in a referendum called for that purpose." Laws of 1957, ch. 240, § 2, p. 941.

[3]The authority of the legislature to enact such legislation was upheld by this court in *State v. Paul,* 53 Wn.2d 789, 337 P.2d 33 (1959). See also, *State ex rel. Adams v. Superior Court,* 57 Wn.2d 181, 356 P.2d 985 (1960) and *State v. Bertrand,* 61 Wn.2d 333, 378 P.2d 427 (1963).

that this state has jurisdiction over offenses committed elsewhere within this state, and such criminal laws of this state shall have the same force and effect within such lands as they have elsewhere within this state. Laws of 1963, ch. 36, § 2, p. 347.

Thus, before the date of the offense for which petitioner was convicted, the state of Washington had, by affirmative legislative action, assumed criminal jurisdiction over the Indians and "Indian country," except as to "Indians when on their tribal lands or allotted lands within an established Indian Reservation and held in trust by the United States or subject to a restriction against alienation."

Generally speaking, tribal lands are lands within the boundaries of an Indian reservation held in trust by the federal government for the Indian tribe as a community, and allotted lands are grazing and agricultural lands within a reservation, which are apportioned and distributed in severalty to tribal members, title to the allotted lands being held in trust and subject to restrictions against alienation for varying periods of time. See 25 U.S.C. § 331, *et seq.*, and § 461, *et seq.*

In the instant case, it is established, by affidavit supplied by respondent, that the highway right of way, whereupon the offense in question was committed, lies upon and runs across property for which a fee simple patent was issued in 1935. The offense, therefore, was not committed upon tribal or allotted lands within the contemplation of Laws of 1963, ch. 36, § 1, p. 346 (RCW 37.12.010). Accordingly, jurisdiction rested in the Superior Court of Okanogan County. *State v. Pierre*, 66 Wn.2d 703, 404 P.2d 788 (1965).

The petition for writ of habeas corpus is denied.

DONWORTH, FINLEY, and WEAVER, JJ., and RYAN, J. Pro Tem., concur.